UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
SHAWN MAZIQUE,

**MEMORANDUM & ORDER**

                Petitioner,                06-CV-1723 (NGG)

     - against -

ROBERT ERCOLE, Superintendent,
Green Haven Correctional Facility,

                Respondent.
-------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Petitioner Shawn Mazique ("Mazique" or "Petitioner") seeks a writ of habeas corpus

pursuant to 28 U.S.C. § 2254. He is currently incarcerated in Green Haven Correctional Facility

and is serving a sentence of twenty-five years to life. In his Petition, filed on April 5, 2006,

Mazique challenges the constitutionality of the judgment of conviction for Murder in the Second

Degree (N.Y. Penal Law § 125.5(1)), two counts of Attempted Robbery in the First Degree (N.Y.

Penal Law § 160.10), and Criminal Possession of a Weapon in the Second Degree (N.Y. Penal

Law § 265.03) entered against him in New York State Supreme Court, Queens County. For the

reasons set forth below, Mazique's petition for a writ of habeas corpus is denied.

**I.      Background**

    *A.     Factual Background and Trial*

On September 30, 1994, at approximately 9:40 p.m., Detective Gerard Donoghue

("Detective Donoghue") responded to a radio call that a male had been shot in the vicinity of

97th Avenue and Brisbane Street in Queens, New York. (Trial Transcript, Testimony of

Detective Donoghue ("Detective Donoghue Tr.") at 1026-27.)[1]  When Detective Donoghue arrived at the location, he noticed that a vehicle had veered off the road and into a fence.  (Id. at 1028.)  Detective Donoghue approached the vehicle and saw that the driver was slumped over the steering wheel.  (Id. at 1030.)  After shining his flashlight into the car, Detective Donoghue "realized that there was blood everywhere [and] that the driver had been shot in the back of the head."  (Id.)  Detective Donoghue radioed for an ambulance to come to the scene.  (Id. at 1031.)

In 1999, Mazique was indicted in Queens County on two counts of Murder in the Second Degree (N.Y. Pen. L. §§ 125.25(1), (2)), Manslaughter in the Second Degree (N.Y. Pen. L. § 125.15(1)), two counts of Attempted Robbery in the First Degree (N.Y. Pen. L. §§ 160.10(1), (2)), and Criminal Possession of a Weapon in the Second Degree (N.Y. Pen. L. § 265.03(2)).  At trial, Mazique's former girlfriend, Diane Whaley ("Whaley"), implicated Mazique in the shooting.  In addition, several law enforcement officers, including New York City Police Detectives Richard Kocienda ("Detective Kocienda") and Michael O'Brien ("Detective O'Brien"), and Tallahassee, Florida Police Investigator Woodrow Kerce ("Investigator Kerce"), testified about the four-year investigation and pursuit of Mazique that culminated in Mazique's arrest in December 1998.

i.      Testimony of Diane Whaley

Whaley testified that she had been living in Jamaica, Queens in September 1994 with her four children, the two youngest of whom are Mazique's children.  (Whaley Tr. at 892.)

---

[1]  References herein to the trial transcript will contain the testifying witness' name followed by "Tr."

Sometime that month, Mazique was released from jail.[2]  After his release, he began regularly visiting his children at Whaley's house.  (Id. at 896-97.)  Approximately three weeks later, Mazique came to Whaley's house in the evening and told her that he had been shot.  (Id. at 896, 898.)  Mazique had a minor flesh wound on his thigh that was bleeding slightly, and Whaley "patted it" to stop the bleeding.  (Id. at 899.)

Whaley testified that, after she attended to Mazique's wound, she came downstairs and noticed a light-skinned black man standing on the back porch of the house.  (Id. at 901.)  Whaley testified that she saw Mazique, whose back was to her, pick up a handgun from the floor and put the gun in his waistband.  (Id.)  There had not been a gun in the house before Mazique came over.  (Id.)  Mazique and the man who had been waiting on the porch left together left and got into a taxi.  (Id. at 904-05.)

Whaley testified that she had heard a report on the following day's news that a cab driver had been murdered two blocks from her house.[3]  (Id. at 906-07.)  Whaley began to suspect that Mazique was involved in the shooting.  (Id. at 1017.)  Whaley testified that when Mazique had returned to her house a week after the reported shooting, she asked Mazique if he had been involved in the shooting.  (Id. at 944.)  He told her that he and the man who had been present at Whaley's house the night of the shooting "went to rob the cab driver and that the cab driver . . . grabbed the gun and the gun went off."  (Id. at 908.)

_____

[2] Mazique's earlier jail sentence was unrelated to the charges at issue in the instant petition.

[3] At trial, the parties stipulated that, on October 1, 1994, WPIX broadcast a story on the 10:00 p.m. newscast about the death of a livery cab driver on September 30, 1994 at 97th Avenue and Brisbane Street in Queens.  (Tr. at 1296.)

Some time after Mazique told Whaley about the shooting, Whaley obtained Mazique's telephone number from her cousin, Delwin Williams, and called Mazique on the telephone several times.  (Id. at 913.)  One of the telephone numbers that Whaley used to call Mazique had a 719 area code, which is an area code for Colorado.  (Id. at 914.)  During these phone conversations, Mazique talked to Whaley about the murder and told her that he was sorry for what he had done.  (Id. at 916-17.)

Whaley testified that, in 1999, she was hospitalized and diagnosed with paranoid schizophrenia.  (Id. at 917.)  She testified that, without appropriate anti-schizophrenic medication, she had hallucinations and heard voices "commenting on [her] and talking about [her]."[4]  (Id. at 919.)  She did not begin taking medication until after her diagnosis in 1999.  (Id.)  She explained that, in 1994, she suffered from a less severe form of paranoia but no hallucinations.  (Id. at 920.)  She believed people were talking about her, but she never actually heard these voices.  (Id.)  She testified that she was able to tell when something was real and when something was a hallucination and that her conversations with Mazique had, in fact, been real.  (Id.)

On cross examination, Whaley testified that the two children she had with Mazique had been taken in 1995 to live in Colorado with Mazique's sister.  (Id. at 925.)  In 1999, Whaley attempted to visit the children but, pending a psychiatric evaluation, was denied visitation rights by a family court in Colorado.  (Id. at 927.)

---

[4]  She also believed that she was being followed by rap artists DMX and Nas and that she could control the weather when she got angry.  (Whaley Tr. at 919.)

ii.     Testimony of Detective Kocienda

Detective Kocienda was assigned to investigate the shooting.  (Kocienda Tr. at 722.)  By speaking with the victim's co-worker at the taxicab company, Detective Kocienda identified the deceased as Nadir Ahmed ("Ahmed").  (Id. at 724.)  Detective Kocienda testified that he also canvassed the area looking for eyewitnesses or anyone who might have had information about the shooting.[5]  (Id. at 724.)  At some point during the investigation, Detective Kocienda received an anonymous telephone call stating that "Cash did it."  (Id. at 726.)  A computer database identified "Cash" as "Shawn Mazique," at which point Mazique became a suspect.  (Id.)

Detective Kocienda testified that when he learned Mazique was on parole from his earlier sentence, he contacted Mazique's parole officer in an effort to locate Mazique.  (Id. at 737-38.)  As a result of his conversation with the parole officer, Detective Kocienda issued a "wanted card," a signal to law enforcement agencies around the country that the New York State Division of Parole should be notified if Mazique were arrested in any of their jurisdictions.[6]  (Id. at 745.)

Detective Kocienda testified that he also spoke with Whaley on October 26, 1994.[7]  (Id. at 746.)  Whaley "reluctant[ly]" indicated that Mazique may have been involved or may have had

---

[5]  At trial, the parties stipulated that the fingerprints taken from the scene of the shooting were of no value, meaning that their source could not be determined with any reasonable degree of certainty.  (Tr. at 1297.)

[6]  Senior Parole Officer William Tanzer ("Officer Tanzer") testified that, as a condition to Mazique's parole status, Mazique had agreed not to leave New York.  (Tanzer Tr. 1181.)  Officer Tanzer testified that a review of Mazique's parole records indicated that Mazique had attended weekly meetings with his parole officer until October 19, 1994.  (Id. at 1183).  After that date, there is no record of Mazique visiting his parole officer, and a Parole Warrant was issued for Mazique on November 17, 1994.  (Id. at 1185.)

[7]  Detective Kocienda testified that he referred to Mazique as "Cash" when asking Whaley about Mazique's whereabouts.  (Kocienda Tr. 748.)

information about the "events of 97th Street and Brisbane." (Id. at 750.) Detective Kocienda testified that he tried, without success, to locate Mazique at his last known address in Queens. (Id. at 751.) He also contacted Mazique's mother in Colorado to ask if she had seen or heard from Mazique. (Id. at 752.) Detective Kocienda was not able to locate Mazique during his investigation, and the case passed to the Cold Case Squad of the New York City Police Department. (Id. at 757.)

       iii.     Testimony of Detective O'Brien

Detective O'Brien, a detective with the Queens Cold Case Squad, began investigating the case approximately three years after the shooting took place. (Id. at 805.) Detective O'Brien testified that after he ran several searches for Mazique, including a New York State Department of Motor Vehicles search, a nationwide arrest search, and a Federal Bureau of Investigation fingerprint search, he obtained an address for Mazique in Colorado. (Id. at 802-03.) Detective O'Brien learned from authorities in Colorado, however, that Mazique's address was no longer current. (Id. at 804.)

Detective O'Brien testified that, in early 1998, he had begun to conduct surveillance of Whaley's home on 102nd Avenue in Queens. (Id. at 805-06.) After almost a year of surveillance, Detective O'Brien observed a car parked in the driveway of Whaley's home, and he checked the license plate to determine the individual to whom the car was registered. (Id. at 809.) The check revealed that the car was registered to Delwin Williams ("Williams"), with a nearby address on 107th Avenue in Queens. (Id. at 810.) In the garbage can in front of Williams' home, Detective O'Brien found an envelope addressed to Williams with a return address of "C. Mazique, 7031 Cedar Springs Road, Weaver, Alabama." (Id. at 812.) The

envelope contained pictures that Detective O'Brien recognized to be photographs of Mazique. (Id.)

Detective O'Brien testified that he had contacted the Weaver, Alabama Police Department and had informed an officer there that he was looking for a homicide suspect whom he believed to be residing in Weaver. (Id. at 816.) Detective O'Brien subsequently traveled to Weaver, Alabama on three separate occasions. (Id. at 817.) On the third trip, Detective O'Brien spoke to Latasha Manuel, a member of the United States Army who knew Mazique. (Id. at 821, 833.) As a result of this conversation, Detective O'Brien learned that Mazique was in Tallahassee, Florida, and Detective O'Brien contacted the Tallahassee Police Department. (Id. at 834.) Detective O'Brien learned later that day that Mazique was in police custody at the Tallahassee Memorial Hospital. (Id. at 836.)

Detective O'Brien traveled to Tallahassee to meet with Mazique. (Id. at 837.) He explained to Mazique that the New York City Police Department had been looking for him for "quite a while" and that he wanted to question him regarding an active parole warrant and a 1994 homicide. (Id. 839-40.) Detective O'Brien testified that Mazique had replied that he would return to New York to answer the parole violation but that he did not have any information about the homicide. (Id. at 840.) On February 19, 1999, Detective O'Brien met with Mazique in the Ulster Correctional Facility in New York. (Id. at 841-42.) Detective O'Brien testified that when he had begun to question Mazique about the homicide case, Mazique had stated that "he didn't want to discuss it, unless he could get some sort of guarantee in writing from the District Attorney's office that he would only have to serve a couple of years in jail for the homicide." (Id. at 843.) Detective O'Brien responded that he was not in a position to make any deals with

Mazique. (Id. at 844.) Detective O'Brien testified that, on January 14, 1999, he had met with Whaley and had obtained a statement from her.[8] (Id. at 845.)

### iv. Testimony of Investigator Woodrow Kerce

Investigator Kerce of the Tallahassee Police Department testified that he had joined the search for Mazique on December 1, 1998, shortly before Mazique's arrest in Florida and subsequent detention in New York. (Kerce Tr. at 1058.) Investigator Kerce was assigned to investigate a suspect who was wanted in New York on a warrant. (Id. at 1058.) After locating Mazique at his home, Investigator Kerce assembled a team of other officers to secure the apartment and the surrounding area. (Id. at 1064.) Investigator Kerce testified that a man he believed to be Mazique had left the apartment in a car being driven by a black female. (Id. at 1065.) Several officers stopped the car, and, as the driver was opening the door to speak with one of the officers, Mazique "shoved her [and] she rolled out [of] the car onto the pavement." (Id. at 1067.) Mazique then took the wheel of the car, "jumped the curb," and began to drive away. (Id. at 1069.) Several patrol cars pursued Mazique at a speed of seventy miles per hour for approximately ten minutes. (Id. at 1070-72.) While attempting to drive around a curve, Mazique ran off of the road and hit a telephone pole. (Id. at 1075.) At that point, Mazique was arrested and taken, in custody, to the hospital. (Id.)

### B. *Procedural Background*

On October 27, 2000, a jury convicted Mazique of one count of Murder in the Second Degree (felony murder), two counts of Attempted Robbery in the First Degree, and Criminal

---

[8] In her testimony, Whaley confirmed that she conveyed information about the shooting, largely similar to the information in her testimony, sometime around January 1999.

Possession of a Weapon in the Second Degree. Mazique was acquitted of both the second count of Murder in the Second Degree and the lesser-included charge of Manslaughter in the Second Degree. On November 20, 2000, Mazique was sentenced as a second violent felony offender to concurrent indeterminate prison terms of twenty-five years to life on the murder conviction and seven-and-one-half to fifteen years on each of the robbery and weapon-possession convictions.

i.      Mazique's Direct Appeal

On August 7, 2002, Mazique, through counsel, appealed his conviction to the New York Supreme Court, Appellate Division, Second Department. In his direct appeal brief, Mazique raised three claims: (1) that his guilt was not proven beyond a reasonable doubt and that the jury's verdict was against the weight of the evidence; (2) that the court improperly admitted evidence that he was on parole at the time of the murder and that he violated the conditions of his parole when he fled New York after the murder; and (3) that his trial counsel was ineffective for failing to call an expert witness to testify about Whaley's mental condition and for failing to object to the prosecutor's summation remarks. In February 2003, the Appellate Division affirmed Mazique's judgment of conviction, holding that the evidence presented at trial was legally sufficient to support Mazique's conviction and that the verdict was not against the weight of the evidence. People v. Mazique, 302 A.D.2d 479 (N.Y. App. Div. 2d Dep't 2004). The court also held that all of Mazique's remaining contentions were "without merit." Id. at 479. On April 21, 2003, the New York Court of Appeals denied leave to appeal. People v. Mazique, 790 N.E.2d 295 (N.Y. 2003).

ii.     Mazique's First Motion for a Writ of Error Coram Nobis

On December 23, 2003, Mazique moved in the Appellate Division, Second Department

for a writ of error <u>coram</u> <u>nobis</u>. Mazique argued that his appellate attorney was ineffective for improperly raising an ineffective assistance of trial claim, based on his trial counsel's failure to call an expert witness.[9] On May 3, 2004, the Appellate Division, Second Department denied Mazique's application, finding that Mazique had failed to establish that he was denied effective assistance of appellate counsel. <u>People v. Mazique</u>, 7 A.D.3d 543 (N.Y. App. Div. 2d Dep't 2004). On May 3, 2004, Mazique sought leave to appeal to the New York Court of Appeals from the denial of his application for a writ of error <u>coram</u> <u>nobis</u>. On June 25, 2004, this application was denied. <u>People v. Mazique</u>, 816 N.E.2d 205 (N.Y. 2004).

      iii.     Mazique's Motion to Vacate Judgment of Conviction

On April 12, 2004, Mazique moved, pro se, to vacate his judgment of conviction, pursuant to N.Y. Crim. Pro. L. § 440.10. Mazique claimed that his trial counsel was ineffective because he failed to advise Mazique as to whether he should accept the State's plea offer of four to eight years of incarceration. (Pre-Trial Proceedings ("Pre-Trial") at 3.) The State responded that Mazique's claim was procedurally barred because sufficient facts appeared on the record to permit appellate review but that Mazique unjustifiably failed to raise the issue on direct appeal. On October 27, 2004, the New York Supreme Court, Queens County, denied Mazique's motion, holding that: (1) the motion was procedurally barred because the issue should have been raised on direct appeal; and (2) Mazique's claim of ineffective assistance of trial counsel was without merit because Mazique's trial counsel had adequately advised Mazique regarding the State's plea offer. <u>People v. Mazique</u>, No. 1468-99, slip op. at 2 (Sup. Ct. Queens County, Oct. 27, 2004)

--------

[9] Mazique argued that the ineffective assistance of trial counsel claim was not a cognizable claim on direct appeal because the record was not fully developed and should be expanded in a motion to set aside the judgment of conviction.

10

(McGann, J).

    iv.  Mazique's Second Motion for a Writ of Error Coram Nobis

  On April 26, 2005, Mazique, pro se, made a second motion for <u>coram</u> <u>nobis</u> relief in the

New York Supreme Court, Appellate Division, Second Department.  Mazique argued that his

appellate counsel was ineffective for failing to submit Whaley's medical records in support of his

legal sufficiency and ineffective assistance of trial counsel claims.  Mazique also claimed that

appellate counsel was deficient for failing to raise a claim based on the trial counsel's failure to

advise Mazique whether to accept the pre-trial plea offer.  This application was denied on

October 17, 2005.  <u>People v. Mazique</u>, 22 A.D.3d (N.Y. App. Div. 2d Dep't 2005).  Thereafter,

Mazique sought leave to appeal this denial to the New York Court of Appeals, and his

application was denied.  <u>People v. Mazique</u>, 844 N.E.2d 800 (N.Y. 2006).

    v.  Instant Petition for Writ of Habeas Corpus

  On January 26, 2006, Mazique, again acting pro se, filed the instant petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254.  In his petition, Mazique claims that he was denied

due process because:  (1) the trial court improperly admitted evidence regarding Mazique's prior

incarceration and release on parole; (2) Mazique's trial counsel was ineffective because (i)

counsel failed to call an expert witness to testify regarding the effects of Whaley's mental illness,

(ii) counsel failed to object to the prosecution's summation, and (iii) counsel failed to advise

Mazique regarding the desirability of the State's pre-trial plea offer; and (3) Mazique's appellate

counsel was ineffective for (i) improperly raising the ineffective assistance of trial counsel claim,

and (ii) failing to raise an ineffective assistance of trial counsel claim regarding the trial counsel's

failure to advise Mazique as to the desirability of the State's plea offer.

**II.     Standard of Review**

The standard of review for habeas corpus petitions filed by state prisoners is set forth in

28 U.S.C. § 2254(d), as amended by the Anti-Terrorism and Effective Death Penalty Act

("AEDPA").   If Mazique's claims have been fully adjudicated on the merits in state court,

habeas relief may not be granted unless the state court's decision:

> (1) was contrary to, or involved an unreasonable application of, clearly established
> Federal law, as determined by the Supreme Court of the United States; or
>
> (2) was based on an unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A state court's decision is contrary to clearly established federal law as

determined by the Supreme Court "if the state court applies a rule that contradicts the governing

law set forth in [the Court's] cases" or "if the state court confronts a set of facts that are

materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result

different from [the Court's] precedent."  Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  A

state court decision is an "unreasonable application" of clearly established federal law "if the

state court identifies the correct governing legal rule from [the] Court's cases but unreasonably

applies it to the facts of the particular state prisoner's case."  Id. at 407.

AEDPA establishes a deferential standard of review under which "a federal habeas court

may not issue the writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or incorrectly.

Rather, that application must also be unreasonable."  Id. at 411.   The Second Circuit has

cautioned, however, that while "[s]ome increment of incorrectness beyond error is required . . .

the increment need not be great; otherwise habeas relief would be limited to state court decisions

so far off the mark as to suggest judicial incompetence." Francis v. Stone, 221 F.3d 100, 111 (2d

Cir. 2000) (citations and quotation marks omitted).

## III. Mazique's Claims

In his Petition, Mazique raises two claims: improper admission of evidence at trial and

ineffective assistance of counsel.[10]

> A. *Whether the Trial Court Properly Admitted Evidence of Mazique's Prior Incarceration, Parole Status, and Violation of Parole*

Mazique claims that the introduction of extensive evidence regarding his prior

incarceration, release on parole, and violation of parole caused him undue prejudice and deprived

him of his right to a fair trial. (Pet. Mem. at 14.) Evidentiary questions are generally matters of

state law and raise no federal constitutional issue for habeas review. See Estelle v. McGuire, 502

U.S. 62, 67-68 (1991) ("It is not the province of a federal habeas court to reexamine state-court

determinations on state-law questions."). For an evidentiary error to amount to a deprivation of

due process, Mazique must show that the error was so pervasive as to have denied him a

fundamentally fair trial. United States v. Agurs, 427 U.S. 97, 108 (1976). The standard for

determining fundamental fairness is "whether the erroneously admitted evidence, viewed

---

[10] Mazique organizes his claims into four points: (1) ineffective assistance of trial counsel for his failure to call an expert witness; (2) improper admission of evidence regarding Mazique's parole and violation of parole; (3) ineffective assistance of appellate counsel for improperly raising an ineffective assistance of trial counsel claim; and (4) ineffective assistance of trial counsel for failing to advise Mazique about the desirability of the State's plea offer. (Petitioner's Memorandum in Support of Writ of Habeas Corpus ("Pet. Mem.")) This court will consider all of Mazique's claims but reorganizes them into two categories: (1) whether the admission of evidence of Mazique's parole status and violation of parole violated Mazique's right to a fair trial, and (2) whether Mazique received ineffective assistance of trial or appellate counsel.

objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.  In short it must have been 'crucial, critical, [and] highly significant.' " Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985) (quoting Nettles v. Wainwright, 677 F.2d 410, 414–15 (5th Cir. 1982)).

Under New York law, evidence of prior bad acts is admissible "when the evidence is relevant to a pertinent issue in the case other than a defendant's criminal propensity to commit the crime charged." People v. Till, 661 N.E.2d 153, 154 (N.Y. 1995).  Such evidence may be used if it "bears on the motive and state of mind in relation to an avoidance of apprehension" or "to complete the narrative of the episode." Id. (citations and quotation marks omitted).  The probative value of the evidence, however, must outweigh the risk of undue prejudice to the defendant. Id.

The trial court did not err in admitting evidence of Mazique's prior incarceration, parole status, and parole violation.  See Till, 661 N.E.2d at 154.  Evidence regarding Mazique's parole status and his subsequent violation of parole was essential in laying out the narrative of the investigation and arrest.  Evidence that Mazique left New York was necessary to complete the timeline of why Mazique was arrested more than four years after the shooting occurred. Evidence of Mazique's violation of parole and flight were also properly admitted because they bore on Mazique's state of mind as it related to his attempt to avoid apprehension.  The jury was free to infer consciousness of guilt from this evidence. Id.  Further, the trial court properly curtailed any potential for prejudice by excluding the nature of the conviction or the length of Mazique's prior sentence.  Because the state court did not err in the admission of this evidence,

the court finds no violation of Mazique's due process rights.  See Collins, 755 F.2d at 19.

       *B.*      *Whether Mazique Received Ineffective Assistance of Trial or Appellate Counsel*

Mazique claims that he received ineffective assistance of trial counsel for counsel's failure to call an expert witness to testify regarding the effects schizophrenia, failure to object during the prosecution's closing arguments, and failure to advise Mazique as to the desirability of the State's plea offer.  He claims that he received ineffective assistance of appellate counsel because his appellate counsel improperly raised a claim about Whaley's schizophrenia on appeal and failed to raise a claim that trial counsel had been ineffective for failing to advise Mazique as to the plea offer.  To prevail on a claim that he was deprived of his constitutional right to effective counsel, Mazique must show that (1) counsel's performance "fell below an objective standard of reasonableness," and (2) that counsel's performance caused him "substantial prejudice."  Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  The performance and prejudice prongs of Strickland may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."  Id. at 697.

In evaluating performance, the inquiry "must be whether counsel's assistance was reasonable considering all the circumstances."  Id. at 688.  A court should presume "a wide range of professionally competent assistance."  Id. at 690.  Further, an attorney is "strongly presumed" to have rendered effective representation.  Id.  As a general matter, strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable," although strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  Id.

15

at 690–91.

To determine the prejudice suffered by a petitioner as a result of counsel's deficient performance, the relevant inquiry is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." Id. The court should look to the "cumulative weight of error" in order to determine whether the prejudice "reache[s] the constitutional threshold." Lindstadt v. Keane, 239 F.3d 191, 202 (2d Cir. 2001). The court must also keep in mind that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." Strickland, 466 U.S. at 696.

Although the Strickland test was formulated in the context of an ineffective assistance of trial counsel claim, the same test applies to claims of ineffective appellate counsel. See Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992). Appellate counsel does not have a duty to advance every non-frivolous argument that could be made, see Jones v. Barnes, 463 U.S. 745, 754 (1983), but a petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

     i.    Trial Counsel's Failure to Call Expert Witness or Introduce Evidence of the Effects of Whaley's Schizophrenia

Contrary to Mazique's claim, trial counsel's failure to present psychiatric evidence showing the adverse effects of schizophrenia on Whaley's testimony did not deprive Mazique of his constitutional right to effective assistance of counsel. The decision to call an expert witness

is a strategic decision for the defense counsel, and generally should not be disturbed.  See United States v. Nersesian, 824 F.2d 1294, 1321 (2d. Cir. 1987).  Counsel's decision not to call a witness, if supported by valid tactical considerations, does not constitute ineffective assistance of counsel.  Rodriguez v. Mitchell, No. 92 Civ.2083(LLS), 1993 WL 229013, at *5 (S.D.N.Y. June 24, 1993).

In Mazique's case, there are legitimate reasons why his trial counsel might not have called an expert witness to testify about the effects of Whaley's schizophrenia.[11]  Under New York law, "[i]t is well settled that expert opinions which are contingent, speculative, or indicative that something is merely possible are lacking in probative force and are therefore inadmissible." People v. Roth, 139 A.D.2d 605, 607 (N.Y. App. Div. 2d Dep't 1988).  An expert called by the defense counsel would not have personally examined Whaley, and could have only speculated as to the effects of schizophrenia generally.  Even had an expert witness examined Whaley prior to trial, there would have been no temporal proximity between the psychiatric evaluation and Whaley's mental state at the time of the shooting.  Furthermore, the State would have had an opportunity to cross-examine the witness and introduce testimony that harmful to the theory of the trial counsel's case.  Even without an expert witness, from the testimony itself and the manner in which Whaley testified, the jurors had sufficient information to determine whether or not to credit Whaley's account.  Thus, trial counsel's decision not to call an expert witness did not constitute ineffective assistance.

---

[11]  In his Petition, Mazique argues that his trial counsel should have presented "evidence showing the nature of [Whaley's] symptoms" as an alternative to calling an expert witness.  (Pet. Mem. at 7.)  However, defense counsel would not have been able to introduce any evidence to the jury without doing so through a witness, and therefore this assertion is without merit.

ii.   Trial Counsel's Failure to Object During the Prosecutions's Summation

Mazique claims that his trial counsel was ineffective for failing to object to three of the prosecution's arguments made during the State's closing arguments: (1) that Whaley accurately recalled Mazique's confession and was not affected by hallucinations when Mazique confessed (Tr. at 1257-58); (2) that the crime lab determined that fingerprints taken from the scene of the shooting were of "no value, [meaning] we can't say that they aren't the defendant's . . . so those could be [his]" (Tr. at 1267);  and (3) that Detective O'Brien testified truthfully and in good faith (Tr. at 1247).

Contrary to Mazique's contentions, "objections, particularly during a prosecutor's summation, are generally considered strategic in nature" and therefore are not generally grounds for federal habeas relief.  Persad v. Conway, No. 05-CV-4199, 2008 WL 268812(CBA), at *15 (E.D.N.Y January 30, 2008).  Where the prosecution's summation is appropriate, a failure to object does not constitute ineffective assistance of counsel.  Cuevas v. Henderson, 801 F.2d 586, 592 (2d Cir. 1986).  Even where a prosecutor does make an impermissible comment on information not in evidence, the comment's effect on the fairness of the trial is ameliorated if the prosecutor is responding to defense counsel's summation.  United States v. Tutino, 883 F.2d 1125, 1136 (2d Cir. 1989).

The prosecution's summation during Mazique's trial was appropriate and within the bounds of the evidence presented at trial, and therefore defense counsel was under no obligation to object during the remarks.

First, the prosecution's arguments regarding Whaley were appropriate given Whaley's testimony that her schizophrenia had not affected her ability to recall her interactions with

Mazique in 1994. (See Whaley Tr. at 920.) Any suggestion by the prosecution that may have exceeded the bounds of Whaley's testimony was a response to the defense counsel's summation, during which defense counsel argued to the jury that "there is absolutely no way you can believe what Diane Whaley tells you." (Tr. at 1233-34.) The prosecution's comment that the fingerprints found at the scene were of "no value" was a proper interpretive comment on the stipulated evidence, that the fingerprints were tested and that their source could not be determined with a reasonable degree of certainty. (See Tr. at 1297.) Finally, the prosecution's comment that Detective O'Brien would be "risking his job, risking going to jail for perjured statements," (Tr. at 1248), was merely an invitation for the jurors to use their common sense to conclude that Detective O'Brien had no reason to lie during his testimony. In his Petition, Mazique correctly asserts that the prosecutor may not give his personal opinion on the evidence or bolster the credibility of a witness. See Floyd v. Meachum, 907 F.2d 347, 354 (2d Cir. 1981). However, the Second Circuit has also said that an argument is not improper where it "relied on evidence in the case to corroborate [the witness'] testimony" or "asked the jurors to draw inferences based on their own common sense that would lead to the conclusion that [the witness] had no motive to lie." United States v. Eltayib, 88 F.3d 157, 173 (2d Cir. 1996). Here, the prosecution merely asked the jurors to draw inferences about Detective O'Brien based on their common sense; the remarks were not improper, and the defense counsel was not ineffective for failing to object to them.

      iii.    Whether Mazique Received Ineffective Assistance for Counsel's Failure to Advise Mazique as to the Desirability of the State's Plea Offer

Mazique claims that he was also deprived of ineffective assistance of trial counsel because his trial counsel failed to advise him of the desirability of accepting the State's plea offer

of four to eight years.  This claim is procedurally barred because Mazique's counsel failed to

raise the issue on appeal and, in any event, fails on the merits.[12]

New York law requires a state court to deny a motion to vacate a judgment of conviction

where the defendant unjustifiably failed to argue the constitutional violation on direct appeal

despite a sufficient record.  N.Y. Crim. Pro. L. § 440.10(2)(c).  Accordingly, when a claim is

procedurally barred under state law, the claim is also procedurally defaulted for the purpose of

federal habeas review.  Sweet v. Bennett, 353 F.3d 135, 139-40 (2d Cir. 2003).[13]

Mazique's claim also fails on the merits.  In order to prevail on such a claim, Mazique

must show: (1) that counsel never gave any advice or suggestion regarding the plea offer; (2) that

Mazique's best interests "necessarily demand[ed] a guilty plea"; and (3) that the defendant's

decision to reject the plea offer was not a rational calculation.  Purdy, 208 F.3d at 47.

 In Boria, 99 F.3d at 497, the Second Circuit held that counsel was constitutionally

required to discuss with the defendant the advisability of accepting the offered plea bargain.  In

Purdy, the Second Circuit clarified this rule, stating: "[W]e think it unwise to read Boria to have

established a per se rule that defense counsel must always expressly advise the defendant whether

to take a plea offer."  Purdy, 208 F.3d at 48.  Therefore, this court must consider the facts and

---

[12]  Mazique first raised this issue on April 12, 2004 in a motion to vacate his judgment of
conviction, pursuant to N.Y. Crim. Pro. L. § 440.10.  The trial court rejected Mazique's claim,
citing Boria v. Keane, 99 F.3d 492 (2d Cir. 1996) and United States v. Purdy, 208 F.3d 41 (2d
Cir. 2000), to find that Mazique's trial counsel had not been ineffective.  People v. Mazique, No.
1468-99, slip op. at 2.

[13]  Although the U.S. Supreme Court has held that courts should not apply a procedural
bar to an ineffective assistance of counsel claim, Massaro v. United States, 538 U.S. 500, 504
(2003), this decision applied only to habeas petitions brought under 28 U.S.C. § 2255 attacking a
federal conviction.  The Second Circuit has explicitly declined to extend this precedent to habeas
petitions such as Mazique's that are brought under 28 U.S.C. § 2254.  Sweet, 353 F.3d at 140.

circumstances surrounding Mazique's rejection of the State's plea offer.

Before trial, Mazique turned down an offer of four to eight years and stated that he was aware that after trial he could face a mandatory life sentence.  (Tr. at 2.)  Mazique's trial counsel told the court:

> I have explained to my client all of the aspects of the case.  I have gone over everything with him.  I have told him what his risk[s] are if he goes to trial.  I told him that . . . if the jury accepts the testimony of the witnesses that we're aware of, coupled with the statements of the police that there is possibly enough there, as a matter of law to have him found guilty.

(Id. at 3.)  However, the trial counsel also stated that he would not make a recommendation to his client as to whether or not he should take a plea because it was ultimately Mazique's decision to make.  (Id. at 4.)

Although it may have been preferable for Mazique's trial counsel to make some sort of recommendation to his client, his failure to do so does not rise to the level of ineffective assistance of counsel under Purdy.  Defense counsel did give Mazique some advice that there was a reasonable possibility that a jury could convict based on the evidence.  Furthermore, a guilty plea was not necessarily in Mazique's best interest.  The jury might have discredited Whaley's testimony, and the defense counsel's motion to exclude Detective O'Brien's statements about his post-arrest conversations with Mazique might have been successful.  The evidence was not so overwhelming that a victory at trial was completely unrealistic, and there is no evidence that the defense counsel believed this to be the case.  See Boria, 99 F.3d at 495 (finding counsel ineffective for failing to advise his client to accept a plea when "it was [defense counsel's] view that [his] client's decision to reject the plea bargain was suicidal").  Mazique demonstrated a rational calculation as to the decision of rejecting the plea offer when he told the judge that he

was aware of the possibility of a mandatory life sentence and that he still wished to proceed to trial.  (See Tr. at 2.)  Therefore, in Mazique's case, trial counsel was not constitutionally required to advise Mazique as to whether he should accept the State's plea offer, and he was not ineffective for not having done so.

iv.    Ineffective Assistance of Appellate Counsel

Mazique's final claim is that his appellate counsel was ineffective for (i) improperly raising a claim on direct appeal about the need for an expert to testify regarding the effect of Whaley's schizophrenia; and (ii) for failing to raise a claim that Mazique's trial counsel was ineffective for failing to advise Mazique as to the desirability of the State's plea offer.  As discussed above, a claim of ineffective assistance of counsel requires that Mazique show that counsel's performance fell below an objective standard of reasonableness and that such deficient performance caused substantial prejudice.  Strickland, 466 U.S. at 687-88.  An appellate counsel's performance is considered constitutionally deficient if a petitioner can show that counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."  Mayo v. Henderson, 15 F.3d 528, 533 (2d Cir. 1994).  Such performance is considered prejudicial if, absent counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different.  Id. at 534.

Mazique's appellate attorney did not perform deficiently, and, even if appellate counsel had raised the plea issue and abstained from raising the expert witness claim, the outcome of the appellate process was not likely to have been different.

First, appellate counsel was not premature in raising the claim that Mazique's trial counsel was ineffective for failing to call an expert witness regarding Whaley's schizophrenia.

When sufficient facts exist on the record to permit the question to be reviewed, the claim must be raised on direct appeal.  See People v. Angelakos, 512 N.E.2d 305, 307 (N.Y. 1987).  Although the correspondence between Mazique and his appellate counsel indicates that Mazique was concerned that the record did not contain sufficient evidence of Whaley's personal medical history to prevail on such a claim, the choice by counsel to pursue this claim on appeal was a sound strategic decision.  Although it would have been possible to develop the record more fully to include additional evidence regarding the effects of schizophrenia, the trial record contained sufficient information about Whaley's mental illness to permit review of the question.  Therefore Mazique was required to raise the issue on appeal.

Regarding appellate counsel's failure to raise the question of whether Mazique's trial counsel should have advised Mazique as to the desirability of accepting the plea offer, as discussed above, such a claim is meritless, and therefore Mazique was not prejudiced by appellate counsel's failure to raise this claim on appeal.  See Mayo 15 F.3d at 534.  Thus, Mazique received effective assistance of appellate counsel on this claim as well.

IV.    **CONCLUSION**

For the reasons described above, Mazique's petition for a writ of habeas corpus is denied.  Because the factual record in the case is sufficient to support the court's decision, Petitioner's request for an evidentiary hearing is denied.  A certificate of appealability shall not issue.  The Clerk of Court is directed to close the case.

SO ORDERED.

Dated:  July 23, 2008                                   __/s Nicholas G. Garaufis___
           Brooklyn, New York                         NICHOLAS G. GARAUFIS
                                                                     United States District Judge